```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
                        INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
vs.                            ) CAUSE NO. 1:16-cr-00107-JMS-MJD
                               ) Indianapolis, Indiana
DONNELL E. GILDER, JR. (01),   ) Monday, July 10, 2017
                               ) 3:36 o'clock p.m.
          Defendant.           )
```

```
                         Before the
              HONORABLE CHIEF JUDGE JANE MAGNUS-STINSON


              TRANSCRIPT OF PLEA AND SENTENCING HEARING



APPEARANCES:
FOR THE GOVERNMENT:   United States Attorney's Office
                      By:  Jeffrey D. Preston
                      10 West Market Street, Suite 2100
                      Indianapolis, Indiana 46204


FOR THE DEFENDANT:    Indiana Federal Community Defenders
                      By:  Gwendolyn M. Beitz
                      111 Monument Circle, Suite 3200
                      Indianapolis, Indiana 46204


ALSO PRESENT:         The Defendant in person.

COURT REPORTER:       Jean A. Knepley, RDR, CRR, CRC, FCRR
                      46 East Ohio Street, Room 309
                      Indianapolis, Indiana 46204



              PROCEEDINGS TAKEN BY MACHINE SHORTHAND
                 COMPUTER-AIDED TRANSCRIPTION
```

1                         I  N  D  E  X

2     PLEA HEARING                                    3
      SENTENCING HEARING                             26

3

4         Certificate of Court Reporter ...........48

5

6

7

8

9

10

11

12                    I N D E X   O F   E X H I B I T S

13    DESCRIPTION                               RECEIVED

14    (There were no exhibits marked or produced.)

15

16

17

18

19

20

21

22

23

24

25

1                      (In open court.)

2          THE COURT:  Good afternoon.  We are here under Cause

3  No. 1:16-cr-107.  This is the case of the United States versus

4  Donnell Gilder, Jr., who is present in person with counsel, Ms.

5  Beitz.  The Government is present by Assistant United States

6  Attorney Jeff Preston.  He is assisted by Brian Reardon with

7  ATF and Paul Buchman with IMPD.

8              This matter is before the Court for change of plea

9  and sentencing, and the Court is assisted by Michelle

10 Fitzgerald, the probation officer who prepared a presentence

11 report in this case.  Our court reporter is Jean Knepley.

12             As I said, we are here for change of plea and

13 sentencing.  Are there any victims to be heard today, Mr.

14 Preston?

15         MR. PRESTON:  No, Your Honor, there are not.

16         THE COURT:  Thank you.

17             And Ms. Beitz, does your client wish to proceed with

18 the petition that has previously been filed?

19         MS. BEITZ:  Yes, Your Honor.

20         THE COURT:  All right, thank you.

21             Mr. Gilder -- is it Gilder?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  I need to ask you some questions today,

24 and before I do I need to swear you in.  So can you raise your

25 right hand for me, please.

1    (Defendant sworn.)

2        THE COURT:  All right.  Sir, do you understand that

3    you are now under oath, and if you answer any of my questions

4    falsely your answers may later be used against you in another

5    prosecution for perjury or making a false statement?

6        THE DEFENDANT:  Yes.  I understand.

7        THE COURT:  Can you state your full name, please.

8        THE DEFENDANT:  My name is Donnell E. Gilder, Jr.

9        THE COURT:  Where were you born?

10       THE DEFENDANT:  Born in Indianapolis, Indiana.

11       THE COURT:  You are a United States citizen?

12       THE DEFENDANT:  Yes, ma'am.

13       THE COURT:  How old are you, sir?

14       THE DEFENDANT:  Twenty-three years old, Your Honor.

15       THE COURT:  How far did you go in school?

16       THE DEFENDANT:  I graduated from high school, 12th

17   grade.

18       THE COURT:  Okay.  Sir, have you ever been treated

19   for mental illness?

20       THE DEFENDANT:  No.

21       THE COURT:  Have you ever been treated for addiction

22   to narcotic drugs of any kind?

23       THE DEFENDANT:  No.

24       THE COURT:  I ask you those questions to try to see

25   if there might be a reason that you would be unable to

1  understand what is happening today.  Is there any reason that

2  you would not be able to understand today's proceedings?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Today, are you under the influence of any

5  drug, medication, or alcoholic beverage of any kind?

6          THE DEFENDANT:  No, I am not.

7          THE COURT:  All right.  When the case first began, an

8  indictment was filed that charged you with various crimes.  Did

9  you receive a copy of the written charges against you when the

10  case began?

11          THE DEFENDANT:  I received a copy.

12          THE COURT:  And have you fully discussed those

13  charges and the case, in general, with Ms. Beitz, your

14  attorney?

15          THE DEFENDANT:  Yes, I have.

16          THE COURT:  And are you fully satisfied with the

17  counsel, representation, and advice that she has given you in

18  this case?

19          THE DEFENDANT:  Yes, I am fully satisfied, and I

20  appreciate it.

21          THE COURT:  At some point, then, did she present to

22  you a signed -- or a proposed plea agreement, an offer from the

23  Government as a way to resolve the case?

24          THE DEFENDANT:  Yes, she has.

25          THE COURT:  And did you have an opportunity to read

1    and discuss the plea agreement with her before you signed it?

2                THE DEFENDANT:  Yes, I did.

3                THE COURT:  Is the plea agreement the complete

4    agreement that you made with the Government?

5                THE DEFENDANT:  Yes.

6                THE COURT:  And Ms. Beitz, were all formal plea

7    offers by the Government conveyed to Mr. Gilder?

8                MS. BEITZ:  They were, Your Honor.

9                THE COURT:  And Mr. Preston, did Mr. Gilder receive

10   the benefit of the most lenient offer the Government intended

11   to make in this case?

12               MR. PRESTON:  Yes, Your Honor.

13               THE COURT:  Mr. Gilder, do you believe you understand

14   the terms of the plea agreement?

15               THE DEFENDANT:  I understand the terms, Your Honor.

16               THE COURT:  All right.  We will go over them in just

17   a minute.  Apart from the written document, has anyone made any

18   promises or assurances that are not in the plea agreement to

19   persuade you to accept the agreement?

20               THE DEFENDANT:  No, Your Honor.

21               THE COURT:  And has anyone threatened you or forced

22   you in any way to sign the plea agreement or plead guilty?

23               THE DEFENDANT:  No, ma'am.

24               THE COURT:  All right.  Do you have a copy of the

25   plea agreement there?

1              THE DEFENDANT:  Yes.

2              THE COURT:  All right.  Let's take a look at it,

3    please.

4              In Paragraph 1 it provides that you have agreed to

5    plead guilty to Counts 9 and 11 of the indictment, which charge

6    you with committing the offense of interference with commerce

7    by threats or violence.

8              You have also agreed to plead guilty to Counts 20 and

9    22, which charge you with knowingly discharging a firearm

10   during and in relation to a crime of violence.  That is,

11   interference with commerce by threats or violence as set forth

12   in Counts 9 and 11 of the indictment.

13             Do you understand that those are the four counts to

14   which you are pleading guilty under this agreement?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  In exchange for your plea to those

17   counts, the Government agrees that it will move to dismiss all

18   of the remaining counts at sentencing.  However, you and the

19   Government have agreed that the offenses charged in the counts

20   that will be dismissed can be considered relevant conduct for

21   the purposes of calculating your offense level under the

22   sentencing guidelines; do you understand that?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  All right.

25             So I need to make sure you are aware of the potential

1  minimum and maximum penalties.  With respect to Counts 9 and

2  11, those offenses are punishable by a term of imprisonment of

3  0 to 20 years, up to a $250,000 fine, and not more than three

4  years' supervised release following any term of imprisonment;

5  do you understand?

6          THE DEFENDANT:  I understand.

7          THE COURT:  All right.  Then with respect to

8  Count 20, that crime is punishable by a term of not less than

9  ten years and not more than life imprisonment, which has to be

10 served consecutively to any sentence imposed for Counts 9 and

11 11, up to a $250,000 fine, and not more than five years'

12 supervised release following any term of imprisonment; do you

13 understand?

14         THE DEFENDANT:  I understand.

15         THE COURT:  Then Count 22 is punishable by a term of

16 not less than 25 years and not more than life imprisonment,

17 which must be served consecutively to any sentence imposed for

18 Counts 9, 11, and 20, up to a $250,000 fine, and not more than

19 five years' supervised release following any term of

20 imprisonment; do you understand?

21         THE DEFENDANT:  I understand.

22         THE COURT:  All right.  If we had gone to trial on

23 the four charges to which you are pleading guilty, the

24 Government would have been required to prove certain elements

25 of each of the crimes.  With respect to Count 9, the Government

1  would have been required to prove, first, that you obtained

2  property from another person without that person's consent;

3  second, that you did so by wrongful use of actual or threatened

4  force, violence, or fear; and as third, as a result of your

5  actions, interstate commerce or an item moving in interstate

6  commerce was actually or potentially delayed, obstructed, or

7  affected in any way or degree.  Do you understand those are the

8  elements of Count 9?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that by pleading guilty

11  you are relieving the Government of the burden of having to

12  prove those elements by proof beyond a reasonable doubt?

13          THE DEFENDANT:  Yes, I understand that.

14          THE COURT:  All right.  Count 11 carries with it the

15  same elements; that is, first, that you attempted to obtain

16  property from another person without that person's consent;

17  second, that you did so by wrongful use of actual or threatened

18  force, violence, or fear; and third, that as a result of your

19  actions, interstate commerce, or an item moving in interstate

20  commerce, was actually or potentially delayed, obstructed, or

21  affected in any way or degree.  Do you understand those are the

22  elements of Count 11?

23          THE DEFENDANT:  Yes, I understand.

24          THE COURT:  And do you understand, again, that by

25  pleading guilty you are relieving the Government of the burden

1  of having to prove those elements by proof beyond a reasonable

2  doubt?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  In Counts 20 and 22, they

5  charge -- they are tied to each of the prior counts I just

6  mentioned.  Count 20 charges that you knowingly discharged a

7  firearm during and in relation to the crime that is charged in

8  Count 9; do you understand?

9          THE DEFENDANT:  Yes, I understand.

10          THE COURT:  And then similarly, Count 22 charges that

11  you knowingly discharged a firearm during and in relation to

12  the crime charged in Count 11.  Do you understand those are the

13  elements of those two counts?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And again, do you understand that by

16  pleading guilty, you are relieving the Government of the burden

17  of having to prove each of the elements of those counts by

18  proof beyond a reasonable doubt?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Now, this plea agreement

21  calls for me to use my discretion in determining how to

22  sentence you in this case.  In doing so, I have to consider all

23  of the factors that are listed in 18 United States Code,

24  Section 3553(a).  One of the factors that that law requires me

25  to consider are the sentencing guidelines and how they apply in

1  your case.  The guidelines are strictly advisory.  They are not

2  mandatory, and I do not have to follow them; do you understand?

3          THE DEFENDANT:  Yes, I understand.

4          THE COURT:  The Court will require payment of

5  restitution; do you understand?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  And by pleading guilty to more than one

8  offense, the Court may order the sentences to be served

9  consecutively or one after the other, although so we are clear,

10  and I believe I have said this, the sentence imposed for

11  Count 20 must run consecutively to the sentences imposed on

12  Counts 9 and 11.  And the sentence imposed for Count 22 must

13  run consecutively to the other sentences; do you understand

14  that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.  Now later today in the

17  proceedings during sentencing, that you and the Government will

18  be allowed to make argument or recommendation as to what

19  sentence you believe is the appropriate sentence in the case.

20  I am not bound by either of your recommendations; do you

21  understand that?

22          THE DEFENDANT:  I understand.

23          THE COURT:  All right.  So it could be that I impose

24  a sentence that is higher than what you expect, and if I do,

25  you could not withdraw from the plea; do you understand?

1          THE DEFENDANT:  I understand.

2          THE COURT:  And similarly, if I impose a sentence

3    that is lower than what the Government expects, the Government

4    could not withdraw from the plea agreement; do you understand?

5          THE DEFENDANT:  I understand, Your Honor.

6          THE COURT:  All right.  The plea agreement was signed

7    in March, and Paragraph 6 says that it was based on information

8    known to the Government at the time it was signed.  Is the

9    Government aware of any additional information that might

10   support the filing of additional charges, Mr. Preston?

11         MR. PRESTON:  No, Your Honor.

12         THE COURT:  All right.  So the Government agrees in

13   Paragraph 6 that it will not bring any other federal charges

14   against you based on information that is known to the

15   Government; do you understand?

16         THE DEFENDANT:  I understand.

17         THE COURT:  But in Paragraph 7, it is made clear that

18   nothing protects you from being prosecuted for offenses that

19   are not covered by the agreement or known to the United States

20   Attorney at this time; do you understand?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Also nothing protects you from being

23   prosecuted for any offense that is committed after the date of

24   the agreement; do you understand?

25         THE DEFENDANT:  Yes, I understand.

1        THE COURT:  When you first came to court you were

2   advised of certain rights that you have in this criminal case,

3   and some of those rights you give up by pleading guilty.  They

4   are summarized in Paragraph 8.  I am going to go over them in a

5   little bit more detail.

6        First, you have the right to plead not guilty to any

7   offense charged against you and to maintain that plea, but when

8   you plead guilty you give up that right; do you understand?

9        THE DEFENDANT:  Yes, ma'am.

10       THE COURT:  You would then have the right to a public

11   and speedy trial by jury, but when you plead guilty you give up

12   that right; do you understand?

13       THE DEFENDANT:  Yes, ma'am.

14       THE COURT:  If we had a trial, you would be presumed

15   innocent, and the Government would be required to prove your

16   guilt beyond a reasonable doubt.  But when you plead guilty you

17   give up those rights; do you understand?

18       THE DEFENDANT:  Yes, I understand.

19       THE COURT:  You would have the right to the

20   assistance of counsel for your defense appointed by the Court,

21   if necessary, at trial and every other stage of the proceeding.

22   But when you plead guilty you give up that right; do you

23   understand?

24       THE DEFENDANT:  I understand.

25       THE COURT:  You would have the right to see and hear

1  all of the witnesses and have them cross-examined in your

2  defense, but when you plead guilty you give up that right; do

3  you understand?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  You have the right on your own part to

6  decline to testify at trial, but when you plead guilty you give

7  up that right; do you understand?

8          THE DEFENDANT:  Yes.

9          THE COURT:  On the other hand, you also have the

10 right to voluntarily choose to testify in your own defense, but

11 when you plead guilty you give up that right; do you

12 understand?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  You would have no obligation to present

15 any evidence at trial, but if you wanted to, you would have the

16 right to use the Court's subpoena power to require witnesses to

17 provide evidence in your defense.  However, when you plead

18 guilty, you give up that right; do you understand?

19         THE DEFENDANT:  Yes, I understand.

20         THE COURT:  Now, if it were your decision not to

21 testify or put on any evidence, these decisions could not be

22 used against you, and I would instruct the jury that they could

23 not consider those decisions in any way in reaching their

24 verdict; do you understand?

25         THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Do you further understand that by

2 entering a plea of guilty, if your plea is accepted by the

3 Court, we will not have a trial, and you would have waived or

4 given up your right to a trial, as well as the other rights

5 associated with the trial that I just described; do you

6 understand?

7          THE DEFENDANT:  Yes, I understand.

8          THE COURT:  Paragraph 9 of the plea agreement on

9 page 6 discusses the sentencing, and it says that the

10 Government agreed to recommend a sentence at the lowest end of

11 the advisory sentencing guideline range that is found to be

12 applicable in this case; do you understand that?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  You are free to argue for and request any

15 sentence, including a sentence below the advisory sentencing

16 guideline range the Court finds to be applicable; do you

17 understand?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Now, following any term of imprisonment,

20 you would be placed on supervised release, and both you and the

21 Government will be allowed to argue whether you should be

22 placed on supervised release, though it is mandatory.  Is it

23 not mandatory?  I am asking the probation officer.

24          THE PROBATION OFFICER:  I don't believe it is

25 mandatory, Your Honor.

1      THE COURT:  You will be allowed to make argument as

2  to whether you should be placed on supervised release for how

3  long and what the conditions of supervised release should be;

4  do you understand?

5      THE DEFENDANT:  Yes.

6      THE COURT:  And even though you can make argument and

7  present evidence about supervised release in Paragraph 12 and

8  later on, you are giving up your right to appeal the length and

9  conditions of supervised release; do you understand?

10      THE DEFENDANT:  Yes, ma'am.

11      THE COURT:  All right.  Because you are pleading

12  guilty to four felony charges, you have to pay a total of $400

13  either today or as ordered by the Court, which is the mandatory

14  special assessment fee required by law; do you understand?

15      THE DEFENDANT:  Yes, ma'am.

16      THE COURT:  You have agreed that you should not pay a

17  fine; do you understand?

18      THE DEFENDANT:  Yes.

19      THE COURT:  And you have agreed to pay restitution

20  for all losses caused by your conduct; do you understand that?

21      THE DEFENDANT:  Yes, ma'am.

22      THE COURT:  I will get to that in just a minute.  So

23  it will be that during the period of your sentence you will

24  have a financial obligation as part of the judgment against

25  you.  And in Paragraph 16 of the plea agreement, you're

1 | agreeing that payment towards that obligation should be both a

2 | condition of supervised release if you are placed on supervised

3 | release and should also be ordered as payment through the

4 | Inmate Financial Responsibility Program of the United States

5 | Bureau of Prisons; do you understand?

6 |    THE DEFENDANT:  Yes, ma'am.

7 |    THE COURT:  That program is sort of a job program

8 | of -- they put you in a position where you earn a wage in

9 | prison.  It isn't a significant wage, but through that work

10 | that you perform and the wage that you earn, you can begin

11 | making repayment of any financial obligation that you owe; do

12 | you understand?

13 |    THE DEFENDANT:  Yes, ma'am.

14 |    THE COURT:  If you don't pay off the amounts that you

15 | owe by the time you are through with your term of imprisonment,

16 | then as we noted a minute ago, you would have to pay them as

17 | part of your supervised release; do you understand?

18 |    THE DEFENDANT:  I understand.

19 |    THE COURT:  And you have agreed to cooperate with the

20 | Government in providing financial information to assist them

21 | with collection; do you understand?

22 |    THE DEFENDANT:  I understand.

23 |    THE COURT:  All right.  You have also agreed in

24 | Paragraph 17, another aspect of your sentence will be that you

25 | are forfeiting any right, title, or interest you have

1  into -- in the Ruger LC9, 9-millimeter pistol bearing the

2  serial number ending 662 and seven rounds of 9-millimeter

3  ammunition; do you understand you are giving up or forfeiting

4  your right to that property?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You are giving up the right to any

7  further notice or process concerning the forfeiture of that

8  property.

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Do you understand?

11         In Paragraph 18, Part 5 of the plea agreement, one of

12 the things I have to do is make sure there is evidence to

13 support your plea of guilty.  And through a stipulation that

14 you and the Government have agreed to in Paragraph 18, I can

15 consider that as evidence in the case; do you understand?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  So if you look at the information that is

18 summarized in the paragraphs that start Counts 9 and 20 and

19 Counts 11 and 22, before you signed this plea agreement, did

20 you carefully review that information?

21         THE DEFENDANT:  Yes, I carefully reviewed it.

22         THE COURT:  And is it factually accurate?

23         THE DEFENDANT:  Yes, it is accurate.

24         THE COURT:  All right.  The Court finds, then, that

25 the information contained in Paragraph 18 is sufficient to

1   establish a factual basis for each of Counts 9, 11, 20, and 22.

2          With respect to the guidelines, I am turning to 22,

3   Part 7 of the plea agreement now.  You and the Government have

4   reached a stipulation concerning the guidelines, and it is

5   consistent with the calculation that is contained in the PSR.

6   So let's go ahead and look at the presentence report and the

7   official guideline calculation that is contained there.

8          Because of the other relevant conduct that is

9   included for both Counts 9 and 11, the counts to which you are

10  pleading guilty, the base offense levels are 20, and those are

11  not altered by -- I am sorry, for Counts -- okay.  For Count 20

12  the base offense level is 20.  There are no adjustments.  For

13  Count 11 -- I am sorry, I am confusing myself.  Let me --

14          MS. BEITZ:  Your Honor, did you mean Count 9?

15          THE COURT:  I was looking at base offense level of

16  20.  I will start over.

17          For Count 9 the adjusted offense level is 20.  For

18  Count 11 the adjusted offense level is 22 because two levels

19  are added to the base offense level because the victim

20  sustained bodily injury.

21          For the March supermarket robbery on February 29th,

22  the base offense level is 20.

23          For the Speedway robbery on March 17, 2016, the base

24  offense level is 20.

25          For the Speedway robbery on March 17, 2016, this one

1   on 65th Street, the base offense level is 20.

2           For the Speedway robbery on East 65th Street on

3   March 19th, the base offense level is 20.

4           For the Speedway robbery on North Allisonville Road

5   on March 19th, the base offense level is 20.

6           For the Speedway robbery on North Allisonville on

7   March 23rd, the adjusted offense level is 20.

8           For the Speedway robbery on North Allisonville Road

9   on April 5th, the adjusted offense level is 20.

10          And for the Speedway robbery on East 65th Street on

11  April 6th, the adjusted offense level is 20.

12          For the Speedway robbery on April 16, 2016, the

13  adjusted offense level is 20.

14          There are 11 units added to the greatest adjusted

15  offense level, which is 22.  But the maximum that can be added,

16  that results in an increase of five levels for a combined

17  adjusted offense level for all of these robberies of 27.

18          Because you have pled guilty and demonstrated

19  acceptance of responsibility, you are entitled to two levels of

20  reduction, and then a third level on motion of the Government

21  because you have pled guilty in a timely way.  Is the

22  Government making that motion?

23          MR. PRESTON:  Yes, Your Honor.

24          THE COURT:  The second part of any guideline

25  calculation is the criminal history category.  Your criminal

1  history category is zero.  You have no convictions that

2  qualify; do you understand that?

3          THE DEFENDANT:  I understand.

4          THE COURT:  All right.  So the guideline range for

5  Counts 9 and 11, which take into account all of those dismissed

6  robberies that I just discussed, is a range 51 to 63 months; do

7  you understand?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  And then to that has to be added the ten

10  years caused by Count 20; do you understand that?

11          THE DEFENDANT:  I understand, Your Honor.

12          THE COURT:  And then to that has to be added the

13  300-month consecutive sentence for Count 22; do you understand

14  that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Counsel, do you agree that is the correct

17  guideline calculation, Mr. Preston?

18          MR. PRESTON:  Yes, Your Honor.

19          THE COURT:  Ms. Beitz?

20          MS. BEITZ:  Yes, Your Honor.

21          THE COURT:  In Paragraph 23, Mr. Gilder, you are

22  giving up some important rights again.  You have the statutory

23  right to appeal the conviction and the sentence imposed and the

24  manner in which the sentence was determined, but in exchange

25  for the concessions made by the Government in the plea

1 agreement, including the dismissal of all the remaining counts

2 in the indictment, you are giving up your right to appeal the

3 conviction imposed in this case on any ground; do you

4 understand?

5 　　　　　THE DEFENDANT:  Yes, ma'am.

6 　　　　　THE COURT:  You are also giving up your right to

7 appeal the sentence imposed in this case on any ground,

8 including the right to appeal that is conferred by 18 United

9 States Code, Section 3742; do you understand?

10 　　　　　THE DEFENDANT:  Yes, Your Honor.

11 　　　　　THE COURT:  This waiver includes all provisions of

12 the guilty plea and sentence imposed, including the length and

13 conditions of supervised release, the amount of any fine, the

14 restitution and forfeiture; do you understand that?

15 　　　　　THE DEFENDANT:  Yes, Your Honor.

16 　　　　　THE COURT:  Sometimes an individual might decide to

17 try to challenge his conviction or sentence outside of a direct

18 appeal by filing a separate legal action, and you have agreed

19 in Paragraph 24 that you will not file any separate legal

20 action, generally speaking; do you understand that?  There are

21 two exceptions.

22 　　　　　THE DEFENDANT:  Yes, ma'am.

23 　　　　　THE COURT:  The two exceptions are with respect to

24 filing a motion to modify your sentence in this case, if the

25 Sentencing Commission or the Congress in the future amends the

1  guidelines to lower the guideline range that pertains to your

2  offense and they make that amendment retroactive, the

3  Government agrees that it will not object to your filing

4  modification motion before the trial Court if that happens; do

5  you understand that?

6         THE DEFENDANT:  Yes, Your Honor.

7         THE COURT:  I am sorry, I should say they won't

8  object on the basis that you have given up your right to file

9  such a motion; do you understand?

10        THE DEFENDANT:  Yes, I understand.

11        THE COURT:  But they might object on other bases.

12 They might object for just, for example, for the number of

13 crimes that were dismissed in this case, or if when you are in

14 prison you are not behaving well, they can object on any other

15 reason other than saying he has given up his right to do that;

16 do you understand?

17        THE DEFENDANT:  Yes, I understand.

18        THE COURT:  The other type of challenge you could

19 make to your conviction or sentence in this case is a challenge

20 based on a claim that you received ineffective assistance of

21 counsel, meaning Ms. Beitz did not provide you with

22 Constitutionally adequate legal representation; do you

23 understand that?

24        THE DEFENDANT:  Yes, I understand.

25        THE COURT:  Do you have any reason to date to believe

1  that she has done that?

2          THE DEFENDANT:  No, I have no reason.

3          THE COURT:  Okay.  All right.

4          Do you have any questions about the plea agreement?

5          THE DEFENDANT:  No.  I have no questions.

6          THE COURT:  Okay.  Are you pleading guilty today of

7  your own free will and because you are guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And similarly, when you agreed to give up

10 your right to appeal and your right to file either a sentence

11 modification or a separate legal challenge to your conviction

12 or sentence, did you do that after consulting with your

13 attorney?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  And of your own free will?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  All right.  Do you believe you understand

18 the possible consequences of your plea agreement?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  All right.  Do you understand we do not

21 have parole in the federal system?  So if you are sentenced to

22 prison, you will not be released to parole.

23         THE DEFENDANT:  I understand.

24         THE COURT:  Do you also understand that in the

25 federal system presently, anybody who is serving a sentence can

1   earn no more than 15 percent good time credit.  So you would

2   have to serve at least 85 percent of your sentence; do you

3   understand?

4           THE DEFENDANT:  I understand, Your Honor.

5           THE COURT:  Do you understand that the offense to

6   which you are pleading guilty is a felony, and if your plea is

7   accepted, you will be adjudged guilty of that offense.  That

8   adjudication may deprive you of valuable civil rights such as

9   the right to vote, the right to hold public office, the right

10  to serve on a jury, and the right to possess any kind of

11  firearm; do you understand?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  All right.  So before I ask you how you

14  plead, do you have any questions concerning the plea agreement

15  or the guilty plea portion of the proceedings?

16          THE DEFENDANT:  No.  I have no questions.

17          THE COURT:  As to the charges contained in Counts 9,

18  11, 20, and 22, how do you now plead, guilty or not guilty?

19          THE DEFENDANT:  I plead guilty to each one.

20          THE COURT:  It is the finding of the Court in the

21  case of the United States v. Donnell E. Gilder, Jr., that the

22  Defendant is fully competent and capable of entering an

23  informed plea, that he is aware of the nature of the charges

24  and the consequences of the plea, that the plea of guilty is a

25  knowing and voluntary plea supported by an independent basis in

1  fact containing each of the essential elements of the offense.

2  The plea is, therefore, accepted, and the Defendant is now

3  adjudged guilty of Counts 9, 11, 20, and 22.

4        Turning to the sentencing portion of the proceedings,

5  the Court has received and reviewed the tender of the many

6  letters of support that were submitted on behalf of the

7  Defendant at Docket 50, and of course, the presentence report.

8  Are there any other documents for the Court to consider, Ms.

9  Beitz?

10        MS. BEITZ:  No, Your Honor.

11        THE COURT:  For the -- any for the victims in the

12  case, Mr. Preston?

13        MR. PRESTON:  No, Your Honor.

14        THE COURT:  And I should have stated this before we

15  went through the -- I accepted the plea, but the total amount

16  of restitution is included in the presentence report on pages

17  20 and 21.  It is 1,090 to the Speedway Gas Station at 71st

18  Street, $452 to the Speedway on 65th Street, $360 to the

19  Speedway on Allisonville Road, and $100 to a clerk at the Marsh

20  Supermarket.  Do the parties agree that is the correct amount

21  of restitution, Mr. Preston?

22        MR. PRESTON:  Your Honor, there is actually a slight

23  alteration of which the parties became recently aware.

24        THE COURT:  Okay.

25        MR. PRESTON:  The $100 set aside for the cashier at

1  Marsh, she was actually reimbursed by Marsh Supermarket, the

2  cost of the phone, and that payment is not necessary.

3            THE COURT:  Marsh is not seeking it?

4            MR. PRESTON:  Marsh is not.

5            THE COURT:  All right.  We will delete that and just

6  do the first three.  Ms. Beitz, is that your understanding as

7  well?

8            MS. BEITZ:  Yes, Your Honor.

9            THE COURT:  All right, thank you.

10           And have you and Mr. Gilder had an opportunity to

11 read and discuss the presentence report?

12           MS. BEITZ:  We have, Your Honor.

13           THE COURT:  Is it accurate?

14           MS. BEITZ:  It is, and aside from one correction is

15 noted on page 23.

16           THE COURT:  Okay.

17           MS. BEITZ:  It was just a correction to something

18 factual in Paragraph 116, nothing that affects the guidelines.

19           THE COURT:  Okay.  Thank you.  That is included in

20 the addendum?

21           THE PROBATION OFFICER:  Yes, Your Honor.

22           THE COURT:  Thanks, Miss Fitzgerald.

23           Are there any objections to the presentence report

24 for the Government?

25           MR. PRESTON:  No, Your Honor.

1           THE COURT:  For the Defendant?

2           MS. BEITZ:  No, Your Honor.

3           THE COURT:  All right.  The Court will accept the

4    presentence report as its findings of fact and will accept the

5    report, for the record, under seal.  In the event of any

6    appeal, counsel will have access to the sealed report but not

7    to the recommendation portion, which shall remain confidential.

8           During the plea portion of the proceedings the Court

9    conducted the guideline calculation with respect to Counts 9

10   and 11.  It results in a term of imprisonment of 51 to 63

11   months, a term of supervised release of one to three years, a

12   potential fine of 20- to $200,000, restitution in the amount of

13   $1,902, and that includes the reduction for the phone and the

14   special assessment of $400.

15          Any objection to that cal- -- in addition, of course,

16   the two mandatory consecutive sentences of 120 months for

17   Count 20 and 300 months for Count 22.  Any objection to that

18   calculation, Mr. Preston?

19          MR. PRESTON:  No, Your Honor.

20          THE COURT:  And Ms. Beitz.

21          MS. BEITZ:  No, Your Honor.

22          THE COURT:  All right, thank you.

23          Mr. Gilder, sir, you have the right to address the

24   Court personally, and if you wish to exercise that right, you

25   are not required to, but if you wish to make a statement, now

1  would be the appropriate time.

2          THE DEFENDANT:  Yes, I wish to make a statement.

3          THE COURT:  Go ahead, please.

4          THE DEFENDANT:  Okay.  I would first like to thank

5  God and give honor to him and glory to him for bringing me

6  through this situation and through this experience with safety

7  and own it and atone as a man today and to accept the

8  responsibility of my actions in what I have done.  I want to

9  apologize to all those people who were affected, including the

10 people who are outside this room today, and I want to say I

11 understand that I put a lot of people's life in danger.

12          I endangered a lot of people's safety.  I broke a lot

13 of peace within the community, and I am really sorry and

14 embarrassed and ashamed for the actions of what I committed.

15 And I want to say also that I apologize to each corporation

16 that was affected and each and every individual such as the

17 employees who were working at the time especially.

18          And I want to especially call upon Miss Tyesha

19 Parker, the victim of Count 11, and I want to apologize to her

20 for the weapon actually discharging accidentally, but when you

21 doing crime or when you are doing something that isn't right,

22 you never know what can happen in that process.  So I realize

23 now that that was the worst decision I ever could have made and

24 during that period, and this is not who I am, but this is a, a

25 decision I chose to make without thinking thoroughly before

1   making it.  So I want to apologize to her personally.

2          I also want to apologize for just the weapon going

3   off, the, the first situation, which was basically done to

4   intimidate, and it was wrong in doing so.  And I am very sorry

5   for doing it, and I can't stress enough how sorry I am.

6          And I just want to apologize to everyone here like I

7   said to you, Judge, to my family, to my beautiful daughter,

8   mother of my child, Abigale.  Apologize to my brothers Donovan

9   and Dorian Gilder.  Apologize to my mother and my father,

10  Donnell, Sr. and Antonia Gilder.  I want to just say I am

11  really sorry for what I have done, and this is an embarrassment

12  on my whole family.  I know the shame this has brought.

13         I am truly sorry, and hopefully we can recover from

14  this because each and every day of these 14 months that I have

15  been detained I thought about the consequences of my actions.

16  I thought about what I have done each and every day, and it

17  saddened me, and it took a long time for me to forgive myself.

18  If you can forgive me, I would really appreciate that.  We can

19  move on from this process and as I continue to better myself as

20  a man and move forward in the right direction.

21         I also want to say that this has been a life-changing

22  experience and that I truly learned my lesson from this, and

23  just being away from the things that you have everyday on the

24  everyday basis you learn to appreciate what you had.  And what

25  I did has taken me away from the people who I did the things

1  for, which was my daughter and to actually provide for her.

2  Because as a man, I, I was going through a hard time in my life

3  where I could not find a job, position, as I am putting in

4  applications.

5       And that is no excuse for me doing what I did, but I,

6  I basically panicked.  That, that is what happened.  I

7  panicked.  I was in a deep, dark, and depressed situation, and

8  I should have just went to the people who really love me and

9  talk to them about what was going on.

10       And the person that is hurting most is my daughter.

11  I am sorry.  I just want to -- even though she is not here, I

12  want to apologize to her and say that I am sorry for all I have

13  done.  I regret everything I have done.  It hurts so bad.  I

14  know I must accept the responsibilities of what I have done.

15  All she ever needed me to do was to be there for her, to

16  protect her and love her and take care of her.  I jeopardized

17  being there in her life as her father as I had a father in my

18  life, and most people don't have that privilege.

19       I am thankful for that, and I thank my parents for

20  the way they raised me.  And I know that I am not a direct

21  example of them.  What I have done is not anything that they

22  have ever taught me.  These are my actions, and I am sorry,

23  because I really appreciate how my father showed me how to

24  raise a family and to take care of responsibilities and work

25  hard for the things that he deserves and the things that he

1  must need to take care of his children and his wife.  I really

2  appreciate that.

3         I would like to thank everyone in my family, and also

4  I would like to apologize to everyone who is here in my support

5  and on my behalf.  And I appreciate you being here and when I

6  really needed you the most.  It means a lot to me.  I see who

7  really loves me in this situation.  I just want to apologize,

8  and I am sorry.

9         I want to apologize to you, Judge, for having to be

10 here to post judgment over this matter.  I apologize to the

11 prosecution and also Miss Gwendolyn Beitz, and I would like to

12 thank her for everything she has done for me in this situation.

13 I just want to move on from this process and better myself and

14 utilize the talents that God has given me as a man that I now

15 realize that I have now more than ever from just spending time

16 and actually learning myself more and more each and every day,

17 learning to have self-control over myself, learn to think

18 before I act and decisions that I make.

19        I learned to keep peace and discretion and be --

20 continue to be humble and not have my pride so high.  So I

21 really humble myself in this situation, and I am thankful to

22 God for that.

23        I would like to thank everyone for having the

24 opportunity to stand before everyone and apologize.  I am

25 really very sorry.  I thank you for the opportunity.

1          THE COURT:  Thank you, sir.  Ms. Beitz.

2          MS. BEITZ:  Whatever sentence is handed down today, I

3    think it is important to recognize that you will be sending him

4    back into an extremely accountable and supportive environment.

5    I, I don't know that I have ever done a sentencing with this

6    many people sitting behind one of my clients, writing the

7    letters that they have written to the Court, and each one, I

8    think, has one key component that I want to point out, and I

9    think it is most eloquently put in his mother's letter.

10         Our son has committed several grievous acts of armed

11   robbery and victimized innocent individuals to with which he

12   has confessed.  That is the environment that you will send him

13   back into, whatever decision that you make today.  These are

14   not people who are saying our, our son did something.  It was a

15   mistake.  They are saying they recognize the grievous nature of

16   his actions.  They recognize that there were victims.  They

17   recognize that punishment must be handed down.

18         So the question before the Court now is what is an

19   appropriate punishment, and this is difficult because as a

20   22-year-old man he has committed actions that Congress has said

21   mandates at least 35 years.  That will place this young man

22   next to me in his 50s when he would be released from the Bureau

23   of Prisons, and that is if the Court just gave him what

24   Congress has mandated for these offenses.

25         So how much is enough?  At 22, we make a lot of

1  really dumb decisions.  At 22 years old, people are still

2  trying to find themselves, and it is not just something we say

3  colloquially that we know.  Scientifically we know.  The brain

4  is not fully developed, especially in men, in young men until

5  they hit 25 in some studies.

6       The front part of his brain, the impulse control

7  portion part of his brain that tells him, stop and go talk to

8  mom and dad.  Don't take this action.  That extra impulse

9  control isn't fully formed yet, but it will be.  By the time

10 that he has done the mandatory minimum that he has to do per

11 Congressional mandate, that part will be fully developed.  He

12 will have had the opportunity for training, for counseling, for

13 vocational, education.  And all of those things will be

14 accomplished well before that 35-year mandatory minimum.

15      So in looking at the Dean case and what the Supreme

16 Court has recognized, this Court can consider the fact that he

17 has mandatory minimums up to 35 years in looking at the

18 guidelines and saying it is too much.  We don't need to add any

19 additional time for this young man to understand that what he

20 did was serious, that what he did was wrong.

21      You heard his heartfelt admissions, his apologies,

22 and you see that in 14 months he has really had that

23 opportunity, even in these 14 months, to grow and to be able to

24 sit down and recognize that he does have to sit down for a

25 while.  But as the Supreme Court says in Dean, the time for the

1  robberies can be one day.  That is what we are asking for in

2  this case.

3          We are not trying to belittle the seriousness of the

4  other robberies.  We recognize that in each one of those

5  instances there were victims, and there were people who want to

6  know that this Judge takes their safety into account.  But I

7  believe each one of them, in hearing that he received 35 years,

8  would be satisfied in knowing that they will be safe, that the

9  community will be safe.  And additionally, he is not going to

10 get out until he is in his 50s even with a mandatory minimum.

11         I ask the Court to recommend placement at the BRAVE

12 program.  I know the Court has heard about this program, but it

13 is absolutely tailored to somebody in Mr. Gilder's position,

14 for young, first offenders.  When you look at his criminal

15 history it is zero.  He has nothing, and it is used to help

16 with cognitive and behavioral residential treatment, as the

17 Court knows.  It is at two locations, and we are asking the

18 Court to recommend the FCI Beckley location, which is in West

19 Virginia.

20         We also ask the Court recommend that he be allowed to

21 take certain vocational programming after he completes BRAVE,

22 which would be barbering, culinary arts, and also that he be

23 placed as close to Indiana as possible, excluding the facility

24 in Terre Haute.  While he would love to be as close to his

25 family as possible, he and I, through discussions, have come to

1  the same conclusion that Terre Haute is not a place that has

2  the type of training that he needs.  It does not have the type

3  of supportive environment that he needs, and he knows he needs

4  to go somewhere where he can make very good use of his time.

5          We also ask the Court recommend alcohol treatment.

6  Looking at the presentence report, I believe the Court can

7  conclude that that is appropriate.  Additionally, anger

8  management.  I think that is something that is going to be key

9  in him growing as a man, as he has said, and also to control

10 his temper, something that he pointed out to probation in the

11 interview and just opened up and said I certainly have some

12 issues with my temper.  I need to learn to control it.

13         Again, that is also going to come with age.  Knowing

14 that the Court can have the confidence that you are sending him

15 back into this environment, you are sending him back into the

16 arms of all of these people, into the folds of his church

17 community, his close family, and his extended family.  I think

18 that 35 years and one day is sufficient in this case.  Thank

19 you.

20         THE COURT:  Thank you.  Mr. Preston?

21         MR. PRESTON:  Thank you, Your Honor.  Briefly, in the

22 United States' humble opinion, while a sentence of 35 years and

23 one day is legally supportable under Dean, it is not

24 necessarily appropriate in this particular case, and I would

25 like to outline why.

1           As this Court probably has seen more during your time

2    on the state court bench, we often have young offenders

3    engaging in a flurry of quick robberies, just impulsive, couple

4    of days hitting gas stations, running around until they got

5    caught.  That is simply not what we have here with Mr. Gilder.

6           With absolutely all respect to his loving family and

7    his support network, that support network was present over the

8    course of two months when Mr. Gilder repeatedly, and I don't

9    mean to say that this occurred on a completely, you know, every

10   four-, five-day basis, but if you average it out over eight

11   weeks, 11 robberies, that is a robbery a week for two months

12   before he was caught.

13          That really does reflect strongly upon the nature and

14   circumstances of the offense, and the Government's humble view,

15   a sentence of nothing on the underlying robberies is, in fact,

16   a disservice to the victims that even Mr. Gilder and his family

17   recognize were greatly impacted by this case.

18          Additionally, when it comes to the nature and

19   circumstances of the offense, there by the grace of God, we

20   didn't have a homicide committed during the last robbery.  The

21   bullet narrowly missed the clerk, having actually traveled

22   between her legs.  After Mr. Gilder fired a shot through the

23   door, whether it be intentionally or inadvertently, but Mr.

24   Gilder had both the impulse control and the presence of mind

25   after having fired a shot at another human being to go and

1 retrieve the single shell casing that discharged from the

2 semi-automatic pistol that he had just fired before entering

3 into the store. That is troubling to the Government. I

4 believe it should be troubling to the Court as well.

5        Pursuant to the plea agreement, we are recommending

6 the low end of the guidelines. I don't necessarily believe

7 that there is a meaningful difference between an in-guideline

8 and non-guideline sentence on the underlying robberies, but the

9 Government does believe that there should be some additional

10 penalty to account for the impact to the significant number of

11 victims that were harmed greatly over the course of two months

12 in 2015.

13        THE COURT: Thank you.

14        Let me say first that the overall -- the reason I can

15 consider anything below the guidelines, contrary to earlier

16 Seventh Circuit precedence, is because the Supreme Court says

17 we always have to remember that the sentence must be

18 sufficient, but not greater than necessary. So that is the

19 overarching purpose of the sentence, and so we will just go

20 through the factors.

21        The nature and circumstances of the offense: 11

22 robberies in eight weeks is a very significant number of

23 robberies, particularly given that the Defendant was armed with

24 loaded weapons, apparently at least twice that guns were

25 discharged twice; one to frighten, which I am sure that is a

1  successful motive there.  I think you got what you wanted, and

2  then the other where the gun actually caused physical injury

3  and damage to the property.

4         So if you think about why you told me you did this,

5  Mr. Gilder, it is because you, you couldn't get a job, right?

6  So folks working at Speedway are making just about minimum

7  wage, maybe a little bit more.  So they, they got a job.  It is

8  not the best job in the world, but it is a good day's honest

9  work.  And there are two places where people need to feel safe;

10  home, No. 1, but their workplace is another one.  So you took

11  that away from them, the ability to feel safe, and so that is a

12  serious consequence to me.

13         I was a state court judge for 12 years, and a couple

14  of times robberies were videotaped so I could hear the fear in

15  the voices of the victims and see the terror on their faces

16  when they were robbed.  It isn't a game.  It is very real, and

17  it is very life altering for them.  So I want to acknowledge

18  that seriousness of, of the offenses that you both are pleading

19  guilty to and that were considered in the guideline

20  calculation.

21         Your history and characteristics are, you know, just

22  tragic to me because, as Ms. Beitz pointed out, all these

23  beautiful people are here for you.  And as the Government

24  pointed out, they were here for you during all of this.  And

25  you're blessed to have them, and I don't think they are going

1   anywhere.  But their ability to impact your life is going to be
2   different than it would be otherwise.
3          So your folks -- just the fact that you have married
4   parents.  There are probably five people of the hundreds I
5   sentence that have, you know, grew up in a family what, you
6   know, what you would consider a regular family.  And I think
7   you appreciate that now, and I wish you would have appreciated
8   it before.
9          So I have to consider the need for the sentence to
10  reflect the seriousness of the offense and promote respect for
11  the law.  I do believe you learned or are learning and will
12  have to learn more.  It also has to provide a just punishment
13  and deter you from committing crimes, to protecting the public.
14  They're sort of -- also, your attorney has done a great job as
15  she always does in looking for programming that is available
16  for you, for environments that are as productive as they can be
17  in the Federal Bureau of Prisons, and she always does a
18  terrific job with that.
19         So all of those recommendations will certainly be
20  part of the sentence because I am supposed to try to provide
21  you with needed education or vocational training, which I will.
22         But thanks to the Dean case, there is sort of an
23  artificial construct in -- and I am not -- no offense, Mr.
24  Preston.  There is sort of an artificial construct in saying
25  there is no penalty for the underlying robberies if I don't

1   assign time to them.  There is huge penalties.  There are two

2   huge penalties -- one is ten years, and one is 25 years and it

3   is a significant period of time.

4          You talk about my state court days.  I think people

5   who get in a credit time situation when I was there, I

6   sentenced people for murder who are going to do less time than

7   he has to do because of the way Congress has set this up.  And

8   so I think that if I were to look at what Congress has done,

9   you get -- you get the ten for one discharge and 25 for the

10  second.

11         They have, they have made the decisions about how

12  these are to be handled, and to me, for a 22-year-old man to be

13  looking and plead guilty to a minimum 35 years is -- it is

14  sufficient.  I, I could entertain an argument that it might be

15  somewhat greater than necessary, not to say, and I want to make

16  it clear on the record.  A serious sentence is deserved in this

17  case, and if I had a complete range of discretion, we would

18  talk between probably 20 and 30, given the number of crimes and

19  the number of victims in this case.  But that is not the

20  discretion that I have, and I respect that, and I think Dean

21  respects it as well.

22         So I think the sentence that Ms. Beitz has asked for

23  does account for every victim, regardless of whether -- I am

24  not saying 35 years and a day is enough disregarding the harm

25  that every single person suffered.  I just think that Congress

1  took that fear and harm into account, and 35 years from now, a

2  lot will be different.  Mr. Gilder will be still younger than I

3  am, but he will be an older gentleman at that time.

4         And I don't think anybody has anything to fear with a

5  35-year-and-one-day sentence so I think the public and all the

6  victims are adequately protected.  So I think that is the

7  sentence the Court will impose in this case.

8         These were serious crimes, and I am not trying to

9  minimize anything about them, but Congress has sort of taken

10 care of how serious this sentence needs to be under these

11 circumstances.  So I am going to go ahead and state the

12 proposed sentence and then give the parties an opportunity to

13 object.

14        Pursuant to the Sentencing Reform Act of 1984, it

15 is -- I want to say one more thing before I do that, however.

16 If something should happen that those two laws get -- or the

17 924(c) penalties change, I am just putting a placeholder on

18 this record that I think a full resentencing is in order.  We

19 should not be dealing with a day.  I want a full resentencing,

20 and I just read a case recently where the Court said, oh, the

21 Judge didn't say something.

22        I wanted to make sure I said that so that we could

23 see how the Defendant is doing, hear from the victims when

24 there was less of a certainty of 35 years, etc.  I just want to

25 make that statement should those laws change and be allowed to

1  apply retroactively, which doesn't happen very often.  Just in

2  case, I wanted to make that statement.

3       So pursuant to the Sentencing Reform Act of 1984, it

4  is the judgment of the Court that the Defendant, Donnell E.

5  Gilder, Jr., is hereby committed to the custody of the Bureau

6  of Prisons to be imprisoned for a term of one day on Counts 9

7  and 11 to be served concurrently, 120 months on Count 20 -- I

8  am sorry, yeah, on Count 20 consecutive to all other counts,

9  and 300 months on Count 22, consecutive to all other counts for

10 a total of 420 months and one day of imprisonment.

11      The Court is recommending participation in the BRAVE

12 program, participation in vocational programs, including

13 barbering and the culinary arts.  The Court is also

14 recommending placement at FCI Beckley in West Virginia and

15 perhaps later placement as close to Indiana as possible,

16 excluding any facility in Terre Haute.  The Court further

17 recommends alcohol treatment and anger management classes.

18      Does that include all the recommendations, Ms. Beitz?

19      MS. BEITZ:  Yes, Your Honor.  Thank you.

20      THE COURT:  The Defendant shall pay restitution to

21 the Speedway Gas Station on 71st street in the amount of

22 $1,090; to the Speedway Gas Station on 65th Street, $452; to

23 the Speedway Gas Station on Allisonville Road, $360.  Payment

24 is to be made directly to the Clerk of the United States

25 District Court for disbursement to the victims.

1          Any payment that is not payment in full should be

2     divided -- all to Speedway.  Never mind.  Okay.

3          The Defendant shall notify the United States Attorney

4     for this district within 30 days of any change of mailing or

5     residence address that occurs while any portion of the

6     restitution remains unpaid.  Any unpaid restitution balance

7     shall be paid during the term of supervision at a rate of not

8     less than 10 percent of the Defendant's gross monthly income.

9     The Defendant shall notify the probation officer of any

10    material change in economic circumstances that might affect his

11    ability to pay restitution.

12         The Court finds the Defendant does not have the

13    ability to pay interest and waives the interest requirement.

14         The fine is not being ordered based on the

15    Defendant's future financial ability to pay.  The Defendant

16    shall forfeit the Ruger LC9, 9-millimeter pistol, bearing

17    serial number ending 662 and seven rounds of 9-millimeter

18    ammunition.  Because of the length of the Defendant's term of

19    incarceration and to aid in his re-entry into society, the

20    Court is imposing a term of supervised release of three years

21    to be served on each of Counts 9, 11, 20, and 22 concurrently.

22         Within the presentence report, the probation officer

23    listed both the mandatory conditions required by law, as well

24    as recommended conditions of supervised release that were

25    proposed at Paragraph 143.

1          Ms. Beitz, have you and Mr. Gilder reviewed those

2     conditions?

3          MS. BEITZ:  We have, Your Honor.

4          THE COURT:  Are there any objections to those

5     conditions?

6          MS. BEITZ:  No objections, Your Honor.

7          THE COURT:  Mr. Gilder, you have the right to have me

8     read each of these conditions out loud to you if you wish, but

9     if you believe you understand them and the reasons they are

10    being imposed as listed in the report, as well, if you believe

11    you understand them, you can waive that right.  Do you wish for

12    me to read them, or do you want to waive that right?

13         THE DEFENDANT:  I would like to waive that right.

14         THE COURT:  All right.  The Court will accept the

15    Defendant's waiver, and we will incorporate, by reference, the

16    mandatory conditions that were included in Paragraph 142, as

17    well as each of the special proposed conditions included in

18    Paragraph 143 and those being Subparagraphs A through Q.

19         The Court is also ordering payment of the mandatory

20    special assessment of $400, which is due immediately and is to

21    be made directly to the Clerk of the United States District

22    Court.

23         Counsel, do you have any legal objection to the

24    sentence I have proposed or request any further elaboration of

25    my reasons under Section 3553(a) either as to the term of

1  imprisonment or the length and conditions of supervised

2  release, Mr. Preston?

3          MR. PRESTON:  No, Your Honor.

4          THE COURT:  Ms. Beitz?

5          MS. BEITZ:  No, Your Honor.

6          THE COURT:  The Court will order the sentence imposed

7  as stated.

8          Mr. Gilder, you can appeal your conviction if you

9  believe that your guilty plea was somehow unlawful or

10  involuntary or if there is some other fundamental problem in

11  the proceedings that was not waived by your guilty plea; do you

12  understand?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Under some circumstances the Defendant

15  would also have the right to appeal his sentence.  However, we

16  discussed the fact that as part of your plea agreement, you

17  waived or gave up your right to take a direct appeal of both

18  your conviction and sentence.  That waiver is generally

19  enforceable, but if you believe it is not valid, you could

20  present that theory to the appellate court; do you understand?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  To begin an appeal you must file a notice

23  of appeal within 14 days of the entry of judgment.  If you

24  cannot afford the filing fee or cannot afford to pay a lawyer

25  to appeal for you, the Court will appoint a lawyer to represent

1   you on appeal.

2           Also, upon request, the Clerk of Court will prepare

3   and file a notice of appeal; do you understand?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Do you have any questions about your

6   appellate rights, your appellate waiver, or the time limit for

7   filing a notice of appeal?

8           THE DEFENDANT:  No, ma'am.

9           THE COURT:  All right.

10          Motion, Mr. Preston, with respect to the remaining

11  counts?

12          MR. PRESTON:  Yes, Your Honor.  The Government moves

13  to dismiss all remaining counts.

14          THE COURT:  Any objection, Ms. Beitz?

15          MS. BEITZ:  No, Your Honor.

16          THE COURT:  Anything further from the defense?

17          MS. BEITZ:  No, Your Honor.

18          THE COURT:  Thank you.  The Court will grant the

19  motion to dismiss and order the Defendant remanded to the

20  custody of the marshal.  Is there anything further from

21  probation?

22          THE PROBATION OFFICER:  No, Your Honor.

23          THE COURT:  Thank you.  Good luck to you.

24          THE DEFENDANT:  Thank you, ma'am.

25          THE CLERK:  All rise.

 1              (Concluded at 4:35 o'clock p.m.)

 2                          - - -

 3               CERTIFICATE OF COURT REPORTER

 4

 5         I, Jean A. Knepley, hereby certify that the

 6   foregoing is a true and correct transcript from

 7   reported proceedings in the above-entitled matter.

 8

 9

10

11  /S/ Jean A. Knepley               September 7, 2018
    JEAN A. KNEPLEY, RDR/CRR/CRC/FCRR   Date
12  Official Court Reporter
    Southern District of Indiana
13  Indianapolis Division

14

15

16

17

18

19

20

21

22

23

24

25